UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTOPHER CUELLAR,  :
                     Plaintiff, :     11-cv-3632 (NSR)
  -against-  :
                                                      :     DISCOVERY
POLICE OFFICER LOVE #93/1934, and :      ORDER
POLICE OFFICER RUGGIERO #43/1906, :
                                                      :
                   Defendants. :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Christopher Cuellar ("Plaintiff") commenced the instant action against, *inter alia*, White Plains Police Officers Maurice Love ("Love") and Domenico Ruggiero ("Ruggiero") (collectively "Defendants") pursuant to 42 U.S.C. §§ 1983 and 1988, alleging a violation of his Federal and State rights to be free from unreasonable seizures, and alleging related state law claims. After a partial grant of Defendants' motion for summary judgment, (Doc. 39), the following claims are currently pending: (1) a federal excessive force claim against Love and Ruggiero; (2) federal and state failure to intervene claims against Love; and (3) a state civil battery claim against Love and Ruggiero. Before the Court is Plaintiff's motion to compel the disclosure of documents, pursuant to Rule 37(a)(1). For the following reasons, Plaintiff's motion is granted.

## I. DISCOVERY SCHEDULE

      The original deadline to complete discovery was November 30, 2012. On October 9, 2012, the parties stipulated to extending the discovery schedule so that (i) non-expert depositions would be completed by December 31, 2012; (ii) requests for admissions would be served by January 31, 2013; (iii) expert reports would be served by January 31, 2013; (iv) rebuttal expert reports would be served by February 28, 2013; (v) expert depositions would be conducted by

March 29, 2013; and (vi) all discovery would be completed by March 29, 2013. At pre-trial conferences before Judge Edgardo Ramos on March 29 and May 24, 2013, the parties represented that discovery was essentially complete, with the exception of Plaintiff's medical examination. Discovery was extended through August 26, 2013. On September 5, 2013, the Court allowed a further extension of the discovery deadline through September 30, 2013, as new counsel for Defendants sought to conduct Plaintiff's medical examination and non-party depositions. Defendants and former defendant City of White Plains ("City") subsequently moved for partial summary judgment. On April 11, 2014, the Court issued an opinion partially granting the motion and dismissing all claims against the City.

On April 24, 2014, the parties sought leave to exchange expert reports "limited to the area of police practices," which leave was granted on May 1, 2014. (Doc. 41.) As requested, the Court ordered the parties to exchange expert reports simultaneously on June 20, 2014, to exchange rebuttal reports simultaneously on July 25, 2014, and to depose experts by August 29, 2014. (*Id.*)

On May 5, 2014, Plaintiff served upon Defendants a First Request for Production of Documents ("Document Demand"). (Pl.'s Br. Ex. A.) The Document Demand seeks:

    1. A copy of the training manual from 2010 relating to do with [sic] but not limited to force to be utilized when arresting a suspect.

    2. A copy of the Central Personnel Index of Police Officer Love and Police Officer Ruggiero.

    3. Any writings or communications given to the defendant police officers when they became members of the force and/or training throughout their career as police officers.

    4. Any videos, photos and/or training[] material relating to the arrest of a suspect.

(*Id.* at 7.) Defendants objected to the Document Demand generally on grounds that, *inter alia*,

2

none of the four requests ("Requests") incorporates "time limitations." (Pl.'s Br. Ex. B, at 2.) Defendants objected to each Request separately on the grounds that they were "untimely" and "not calculated to lead to the discovery of admissible evidence." (*Id.* at 3.) Defendants objected further to Requests 3 and 4 on the grounds that they were overbroad and vague.

On June 2, 2014, the parties notified the Court of their discovery dispute, and Plaintiff sought an order to compel production of the documents sought. *See* Fed. R. Civ. P. 37(a)(1). On June 4, 2014, the Court held a conference to discuss the discovery dispute. At the conference, after a discussion of the timeliness of Plaintiff's document requests and the relevance of the documents sought, the Court ordered the parties to brief the issue of relevance.

## II. DISCOVERY STANDARD OF LAW

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Relevance in the context of discovery "is an extremely broad concept." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013) (internal quotation marks omitted); *accord Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that Rule 26(b)(1) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *ACLU v. Clapper*, 959 F. Supp. 2d 724, 746 (S.D.N.Y. 2013). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Furthermore, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Funds*, 437 U.S. at 351. "The Congressional policy in favor of broad enforcement of the civil rights laws supports complete discovery when their violation is alleged." *Kinoy v.*

3

*Mitchell*, 67 F.R.D. 1, 12 (S.D.N.Y. 1975); *see also Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) ("[A]ctions alleging violations of § 1983 require especially generous discovery.").

### III. RELEVANCE TO EXCESSIVE FORCE CLAIM

The Fourth Amendment, which guarantees the right to be free from unreasonable seizures, prohibits police officers from using excessive force in effecting an arrest. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Courts apply an objective reasonableness standard to determine whether the force used was excessive. *Id.* (quoting *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)). Thus, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)). To determine whether the force used was reasonable, courts consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect pose[d] an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396; *Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). The evidence is viewed "from the perspective of a reasonable officer on the scene," allowing for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (internal quotation marks and citations omitted). Plaintiff argues generally that consideration of the totality of the circumstances includes consideration of training materials and personnel files.

4

### A. Training Materials

Plaintiff asserts that "in federal civil rights actions, information relating to a police officer's training is routinely disclosed in claims alleging the use of excessive force." (Pl.'s Br. 5.)  He asserts that the information sought in Requests 1, 3, and 4 is relevant to corroborate Defendants' deposition testimony, wherein they testified to having been trained on arresting suspects, and to determine whether Defendants followed procedure.  Plaintiff argues that if he shows Defendants did not follow established procedures, such a showing "may lead a trier of fact to determine that [Defendants] did not act reasonably under the circumstances." (*Id.* at 7); *see also Richir v. Vill. of Fredonia*, No. 05CV76S, 2008 WL 687436, at *5 (W.D.N.Y. Mar. 11, 2008) (finding one possible use of training materials is "to show the standard and level of training of the defendant [police officers] and how much they received as of the date of the . . . incident on dealing with potential arrest . . . situations").  Plaintiff also asserts that the training materials may lead to admissible evidence in the form of his expert's opinion.  His expert's report could then purportedly aid a trier of fact in determining whether Defendants' actions constituted excessive force.  Additionally, Plaintiff asserts that the training materials are equally relevant for the failure to intervene claims against Love.  Potentially, the materials could demonstrate that Love, based on the training he received, had reason to know Ruggiero used excessive force.

Defendants counter that the training materials would be relevant only to the already-dismissed *Monell* claim and state-law negligence claims against the City.  Defendants assert that the City based its for motion for summary judgment on the complete lack of evidence to establish a municipal policy or practice of using excessive force or allowing such force to be used, as well as the absence of proof to demonstrate it was negligent in hiring, training, or

5

supervising Defendants. Defendants also assert that Plaintiff's relevance argument based on the potential inclusion of evidence in his expert's report is moot, as the parties have already exchanged expert reports. Defendants do not explain why the Requests are irrelevant to the currently pending claims.

In light of the broad standard of discovery, the Court concludes that the training materials sought in Requests 1, 3, and 4 are relevant to Plaintiff's claims. It is reasonable that a trier of fact could consider Defendants' actions in light of the training they received through June 26, 2010, the date of the incident, as part of the totality of the circumstances. Accordingly, the motion to compel must be granted as to these Requests. The Court makes no finding as to the admissibility of this evidence at trial.

**B. Personnel Files**

Plaintiff asserts that long-established Second Circuit precedent allows for discovery of personnel records and evidence of past misconduct in civil rights cases. *See McKenna v. Inc. Vill. of Northport*, No. CV 06-2895 (SJF) (ETB), 2007 WL 2071603, at *7–9 (E.D.N.Y. July 13, 2007) (citing *Barrett v. City of New York*, 237 F.R.D. 39 (E.D.N.Y. 2006); *Unger v. Cohen*, 125 F.R.D. 67 (S.D.N.Y. 1989); *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988)). In *McKenna*, which involved allegations of excessive force, the court found that personnel records of defendant officers were discoverable despite an assertion of state-law privilege, as "no federal rule prohibits discovery of police personnel documents." *Id.* at *7. In *Session v. Rodriguez*, No. 3:03CV0943, 2008 WL 2338123 (D. Conn. June 4, 2008), a false arrest and malicious prosecution case, the court granted the plaintiff's motion to compel personnel files and internal investigations of alleged police misconduct, noting that in civil rights actions against police officers, "internal investigation files are discoverable when they involve allegations of similar

misconduct . . . whether substantiated or not." *Id.* at *2.  In *Unger v. Cohen*, which involved allegations of excessive force and related claims, the court noted that "information in the administrative files about [similar] accusations [of misconduct] is an obvious source of 'leads' which resourceful counsel may pursue to evidence bearing on intent or other factors in issue." 125 F.R.D. at 70-71.

Plaintiff asserts that information in Defendants' personnel files could be relevant as to whether Defendants willfully violated Plaintiff's constitutional rights as well as to any defenses Defendants may offer.  Defendants counter that information in their personnel files, if it showed they were disciplined for prior similar conduct, would be inadmissible to prove that excessive force was used.  *See* Fed. R. Evid. 404(b)(1).  Defendants also proffer an affidavit from Lieutenant FitzMaurice ("FitzMaurice") of the City's police department, wherein he avers that he reviewed their files but neither was ever disciplined for using excessive force.  (Defs.' Br. Ex. A.)  FitzMaurice also avers that Ruggiero was the subject of a 2008 complaint alleging the use of excessive force, but that such complaint was deemed unfounded.  (*Id.* ¶ 5.)

As case law indicates, whether an administrative complaint is unfounded is irrelevant to its discoverability.  *See Unger*, 125 F.R.D. at 70-71.  Additionally, admissibility of disciplinary records is not the issue, but relevance for discovery purposes.  Fed. R. Civ. P. 26(b)(1).  Moreover, depending on the actual contents of the files, Plaintiff could potentially offer the evidence for some reason other than showing Defendants acted in conformity with other prior acts.  *See* Fed. R. Evid. 404(b)(2).  Finally, as Defendants expended the effort to have FitzMaurice review their files, it is not unreasonable to require them to produce those files so that Plaintiff may review them.  Accordingly, the motion to compel must be granted as to Request 2.  The Court makes no finding as to the admissibility of this evidence at trial.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's motion to compel disclosure is GRANTED. Disclosure shall be limited to relevant documents in existence on or before June 26, 2010. The Court declines to deny Plaintiff's motion on grounds of untimeliness, since discovery has been reopened as to expert testimony. No costs shall be awarded. Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Dated: July 14, 2014  
       White Plains, New York

SO ORDERED:

_____  7/14/14  
NELSON S. ROMAN  
United States District Judge